IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNYSLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 11-619 |
| ALEXANDER RIVERA, : | |
| Defendant. : | |

MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                                                              October 30, 2015

Defendant Alexander Rivera has filed a *pro se* Motion for New Trial pursuant to Federal Rule of Criminal Procedure 33 and a *pro se* Motion for Arrest of Judgment pursuant to Federal Rule of Criminal Procedure 34. In support of these motions, Defendant alleges that this Court made a number of errors in its evidentiary rulings during trial, prevented Defendant from consulting with his standby counsel during trial, and was convicted under a statute that is unconstitutional. For the reasons stated below, Defendant's motions will be denied.

I.      FACTS AND PROCEDURAL HISTORY

After a jury trial, Defendant Rivera was convicted of possession of a firearm by a convicted felon.[1] At trial, the Government called two Philadelphia police officers, Brian Waters and Kevin Gorman, who testified as to the circumstances of Defendant's arrest on September 12, 2011.[2] Officer Waters testified that on the evening of September 12, 2011, he and Officer

---

[1] 18 U.S.C. Section 922(g)(1); Trial Transcript ("Tr.") 3/19/15 at 110-11.

[2] Tr. 3/17/15 at 54-55, 135.

Gorman were on routine patrol when they saw a gray Ford Explorer disregard a stop sign.[3] After pulling in behind the Explorer, Officer Waters testified that he exited his vehicle and saw Defendant sitting in the back of the Explorer, moving frantically as though trying to kick something under the seat in front of him.[4] When Officer Waters opened the passenger door, he testified that he saw a bag on the floor partially wedged underneath the seat in front of Defendant, with the barrel of a gun sticking out of the bag.[5] Officer Waters testified that he searched the bag and also found a second gun, an additional loaded magazine, a book, clear plastic baggies, a police scanner, and a set of car keys.[6]

Before trial, Defendant filed a Motion to Suppress Physical Evidence, seeking to exclude the contents of the bag.[7] After a hearing, the Court denied Defendant's motion.[8] While Defendant and the Government subsequently stipulated that Defendant knowingly possessed the bag, scanner, clear baggies, keys, and book, at trial Defendant again sought to exclude the physical evidence of the scanner.[9] The Court overruled Defendant's objection and admitted the scanner into evidence.[10]

After the Government rested, Defendant, representing himself *pro se*, called as witnesses his aunt, his cousin, himself, and Donald Davis, the driver of the vehicle stopped by the arresting

---

[3] Tr. 3/17/15 at 49-51.

[4] Tr. 3/17/15 at 52.

[5] Tr. 3/17/15 at 54.

[6] Tr. 3/17/15 at 55-61.

[7] 11/24/14 Motion to Suppress Physical Evidence Doc. 91 at 3-4.

[8] 1/23/15 Order Doc. 105 at 1; 3/13/15 Findings of Fact and Conclusion of Law Doc. 124 at 1.

[9] Tr. 3/17/15 at 58.

[10] Tr. 3/17/15 at 58.

officers.[11] Defendant's aunt, Elsie Rosado, testified that she ate dinner with Defendant on September 12, 2011, the night of his arrest.[12] She testified that after dinner, she placed Defendant's keys and police scanner in his bag for him.[13] While she was placing these items in his bag, Rosado testified that she looked inside the bag and saw a book.[14] Rosado also testified that Defendant left her house around 10 p.m. when his friend Donald Davis picked him up.[15]

Donald Davis then testified that he did pick up Defendant to give him a ride to the train station when they were stopped by police.[16] Davis testified that he did not have any guns in his vehicle at the time he was stopped.[17] Next, Defendant's cousin, Raphael Lopez, testified that Davis told him that "whoever [the guns] belonged to should have accept [*sic*] responsibility and that [Defendant] shouldn't have been incarcerated for other people's mistakes."[18]

Finally, Defendant, representing himself, testified that he did not have any firearms in his bag.[19] He testified that he would not have had illegal guns because he was concerned about his fugitive status and could be arrested due to an outstanding bench warrant for his arrest.[20] Because

---

[11] Tr. 3/18/15 at 42, 68, 124-25, 137.

[12] Tr. 3/18/15 at 44.

[13] Tr. 3/18/15 at 48.

[14] Tr. 3/18/15 at 47.

[15] Tr. 3/18/15 at 46, 50.

[16] Tr. 3/18/15 at 65, 68.

[17] Tr. 3/18/15 at 85.

[18] Tr. 3/18/15 at 122.

[19] Tr. 3/18/15 at 140.

[20] Tr. 3/18/15 at 138-40.

of this warrant, Defendant testified that he bought a police scanner to avoid detection.[21] In his direct testimony, Defendant testified that the bench warrant had been issued because he violated his probation and that he was on probation for convictions for fleeing and attempting to elude a police officer and simple assault.[22] During cross examination, the Government questioned Defendant about his prior convictions.[23] Defendant objected to this line of questioning, both before trial and at trial, and sought to have his prior convictions excluded.[24] The Court overruled Defendant's objections.[25]

In addition to calling these witnesses, Defendant equivocated about whether he would also call FBI Agents Kevin Coleman and William Sinopole to testify that they were surveilling Defendant around the time of his arrest.[26] These agents were present and made available to Defendant on the third day of trial, but Defendant chose to rest his direct case at the end of the third day without calling them.[27] Prior to closing the evidence, the Court specifically asked Defendant whether he planned to call the agents and he explicitly stated that he was not going to call them.[28] As a result, Defendant rested. With no rebuttal evidence, the evidence was closed.[29]

---

[21] Tr. 3/18/15 at 138.

[22] Tr. 3/18/15 at 138.

[23] Tr. 3/18/15 at 168-70.

[24] 11/19/12 Def's Reply Doc . 33 at 9; Tr. 3/18/15 at 147.

[25] Tr. 3/18/15 at 153-54.

[26] Tr. 3/18/15 at 13-14.

[27] Tr. 3/18/15 at 182, 187.

[28] Tr. 3/18/15 at 182, 187.

[29] Tr. 3/18/15 at 187.

4

The next day, before closing arguments, Defendant sought to reopen the evidence and call the surveilling agents to testify.[30] The Court denied Defendant's motion.[31]

At the beginning of the trial, Defendant had also filed a motion requesting phone records of calls between the arresting officers and the surveilling agents.[32] The Court denied Defendant's motion because the Government stated it did not have such records and Defendant did not present any evidence suggesting that any such records existed.[33]

## II. LEGAL STANDARD

A court "may vacate any judgment and grant a new trial if the interest of justice so requires."[34] However, motions for a new trial are "only granted with great caution and at the discretion of the trial court."[35] The Defendant must establish both that the District Court made errors during trial and that it is "reasonably probable" that these errors influenced the jury's verdict.[36] In evaluating a motion for new trial, the court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case."[37] A court "must arrest judgment if the court does not have jurisdiction of the charged offense."[38]

---

[30] Tr. 3/19/15 at 4-5.

[31] Tr. 3/19/15 at 9-11.

[32] Tr. 3/16/15 at 29-30.

[33] Tr. 3/16/15 at 31, 33-34.

[34] Fed.R.Crim.P. 33(a).

[35] *United States v. Martinez,* 69 F. App'x. 513, 516 (3d Cir. 2003).

[36] *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015); *United States v. Crim*, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008*) aff'd*, 451 F. App'x 196 (3d Cir. 2011).

[37] *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) *cert. denied,* 135 S. Ct. 2309 (2015) (internal quotation omitted).

[38] Fed. R. Crim. P. 34.

### III. DISCUSSION

#### A. Motion for New Trial

Defendant alleges that the Court made six errors that denied him a fair trial. He alleges the Court erred by (1) denying him access to his standby counsel and by making disparaging remarks about his *pro se* representation, (2) ruling that Defendant's witness Donald Davis was not an adverse witness, (3) refusing to allow Defendant to call the surveilling agents as witnesses, (4) denying Defendant's request for the arresting officers' and the surveilling agents' telephone records, (5) admitting evidence of Defendant's prior convictions, and (6) permitting the Government to introduce the police scanner into evidence.

##### (1) Denial of access to standby counsel and remarks about *pro se* representation

Defendant argues that the Court erred at trial in ordering standby counsel not to assist Defendant. Defendant chose to represent himself, even after the Court explained that the role of standby counsel would be limited.[39] The Court specifically informed Defendant that standby counsel's assistance at trial would be ministerial and Defendant affirmed that he understood.[40] The Court also warned Defendant that by choosing to represent himself, he was waiving his right to claim ineffective assistance of counsel heretofore.[41] Finally, the Court made it clear that standby counsel would be available to represent Defendant if, at any time, he no longer wished to represent himself.[42]

---

[39] Tr. 3/16/15 at 52-53. Defendant had four different lawyers from the District Court's Criminal Justice Act Panel appointed for him before he chose to represent himself.

[40] Tr. 3/16/15 at 53.

[41] Tr. 3/16/15 at 19.

[42] Tr. 3/16/15 at 53.

Restricting standby counsel to ministerial matters was within the Court's discretion because, having elected to proceed *pro se*, Defendant had no constitutional right to standby counsel[43] and hybrid representation is not permitted in the Third Circuit.[44] For these same reasons, and because Defendant has no constitutional right to effective assistance of standby counsel, Defendant cannot prevail on his claim that standby counsel refused to exceed the limited role ordered by the Court.[45]

Finally, Defendant alleges that this Court made disparaging remarks about Defendant's decision to represent himself *pro se* and that these remarks, as well as standby counsel's demeanor, prejudiced the jury. However, Defendant does not point to any specific remarks made by the Court, or examples of counsel's demeanor, and Defendant's general allegations have no basis in the record. When the Court referenced Defendant's self-representation to the jury, it did so only to ensure that the jury understood the proceedings.[46] For example, the Court used the Third Circuit model jury instruction to explain to the jury that Defendant had a right to represent himself *pro se* and that his decision to do so "must not affect your consideration of the case."[47]

---

[43] *Thomas v. Carroll*, 581 F.3d 118, 125 (3d Cir. 2009) ("the Superior Court *could* have appointed standby counsel for Thomas…However, nothing in those cases *mandated* that the trial judge appoint counsel when Thomas elected to represent himself."); *United States v. Tilley*, 326 F. App'x 96, 96 (3d Cir. 2009) ("[Defendant] had no constitutional right to standby counsel, let alone a right to have standby counsel raise objections on his behalf."); *United States v. Lawrence*, 161 F.3d 250, 253 (4th Cir. 1998) (holding that restricting standby counsel to providing advice on procedural matters only was reasonable and was not an abuse of discretion).

[44] *United States v. Turner*, 677 F.3d 570, 578 (3d Cir. 2012).

[45] *United States v. Gagliardi*, No. 10-480, 2010 WL 2253736, at *3 (E.D. Pa. June 1, 2010) (collecting cases).

[46] *See e.g.,* Tr. 3/19/15 at 86.

[47] Tr. 3/17/15 at 30; Third Cir. Model Criminal Jury Instructions 1.18 Pro Se Defendant. The Court stated: "Now, Mr. Rivera has decided to represent himself in this trial and not to use the services of an attorney. He has a constitutional right to do that. His decision to do that has no bearing on whether he is guilty or not guilty, and it must not affect your consideration of the case. Because Mr. Rivera has decided to act as his own lawyer, you will hear him speak at various times during this trial. He may make an opening statement and a closing argument. He may ask questions of witnesses, make objections and arguments to the Court. I want to remind you that when he speaks in

### (2) Ruling that Donald Davis was not an adverse witness

Defendant argues that the Court erred in ruling that his witness Donald Davis was not an adverse witness and in barring Defendant from asking Davis leading questions. District courts have discretion to determine whether a party may use leading questions to question his own witness.[48] Under Federal Rules of Evidence 611(c), "the court should allow leading questions…when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party."[49] Witnesses are adverse where they are identified with an adverse party or have been shown to be biased against the direct examiner.[50] Witnesses identified with the adverse party are generally employees, agents, friends or relatives of the adverse party,[51] while bias is typically demonstrated by a witness's demeanor.[52] Here, Defendant has neither demonstrated that Davis was identified with the Government nor that his demeanor suggested bias towards Defendant. While Defendant argues that Davis is adverse to Defendant because Davis testified at the grand jury proceeding that resulted in Defendant's indictment, this is insufficient to establish that Davis is identified with the Government. This is especially so here because the Government had no contact with Davis after the grand jury proceeding in 2011[53] and Davis testified that he

---

these parts of the trial, he is acting as his own attorney in the case and his words are not evidence. He's not acting as a witness sworn in to give evidence. The only evidence in this case comes from witnesses who testify under oath on the witness stand and from exhibits that are admitted." Tr. 3/17/15 at 30.

[48] *St. Clair v. United States*, 154 U.S. 134, 150 (1894); *United States v. McLaughlin*, No. 95-CR-113, 1998 WL 966014, at *1 (E.D. Pa. Nov. 19, 1998).

[49] Fed. R. Evid. 611(c).

[50] *Vanemmerik v. The Ground Round, Inc.,* No. 97-5923, 1998 WL 474106, at *1-2 (E.D. Pa. July 16, 1998).

[51] *Id.* at *1.

[52] *Id.* at *2.

[53] Tr. 3/17/15 at 122.

was friends with Defendant.[54] While Defendant may have been disappointed in Davis's testimony, that does not establish that he was an adverse witness.[55]

Even if the Court had committed error by prohibiting Defendant from asking Davis leading questions, Defendant has not established a reasonable probability that this error influenced the jury's verdict.[56] Defendant has not demonstrated that Davis's testimony would have been materially different had Defendant been permitted to ask Davis leading questions, nor that any differences in his testimony would have influenced the jury. As Defendant has neither demonstrated that the Court committed an error nor that any alleged error would have influenced the verdict, Defendant has failed to establish that the Court's ruling on this issue entitles Defendant to a new trial.

Defendant also argues that the Court erred by prohibiting him from questioning Davis about his prior arrests and convictions. This argument is meritless. First, the Court did permit Defendant to question Davis about many of his convictions, including his convictions for robbery, theft by receiving stolen property, possession of an instrument of crime, criminal trespass and theft by unlawful taking.[57] While the Court made a preliminary ruling preventing Defendant from generally asking Davis whether he was "ever" convicted of a felony, this was

---

[54] Tr. 3/18/15 at 65.

[55] *Videon Chevrolet, Inc. v. Gen. Motors Corp.*, No. 91-4202, 1994 WL 188931, at *5 (E.D. Pa. May 16, 1994) *aff'd*, 46 F.3d 1120 (3d Cir. 1994).

[56] *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015); *United States v. Crim*, 561 F. Supp. 2d 530, 533 (E.D. Pa. 2008*) aff'd*, 451 F. App'x 196 (3d Cir. 2011).

[57] Tr. 3/18/15 at 72, 114-15.

not a final ruling.[58] When Defendant later asked specific questions about certain convictions, without objection from the Government, the Court allowed Davis to respond.[59]

Second, the Court did not err in refusing to allow Defendant to question Davis about his prior arrests because evidence of a witness's prior arrests is generally inadmissible.[60] While evidence of a prior bad act is admissible where "probative of the character for truthfulness or untruthfulness of the witness,"[61] Defendant has not identified which of Davis's prior arrests he sought to address, let alone argued that they were probative of his character for truthfulness. As a result, there was no reason for the Court to depart from the general rule and allow Defendant to question Davis about his prior arrests. Moreover, given that the jury knew of Davis's convictions, Defendant has not shown that he was prejudiced by the exclusion of evidence regarding Davis's arrests.

### (3)    Ruling that Defendant could not call the surveilling agents as witnesses

Defendant next argues that the Court erred in ruling that evidence could not be reopened to allow Defendant to call the surveilling agents to testify. While Defendant alleges that he made many requests to call the surveilling agents as witnesses, he withdrew these requests prior to resting at the end of the third trial day.[62] Before Defendant rested, the Court explicitly asked Defendant whether he intended to call the surveilling agents as witnesses and Defendant

---

[58] Tr. 3/18/15 at 76.

[59] *Id.*

[60] *United States v. Quiles*, No. 07-391-01, 2009 WL 466283, at *3 (E.D. Pa. Feb. 24, 2009) *aff'd,* 618 F.3d 383 (3d Cir. 2010).

[61] Fed. R. Evid. 608.

[62] Tr. 3/18/15 at 182.

responded that he would not be calling them.[63] As he had no other witnesses, Defendant then rested and the Court closed the evidence.[64] The next day, although the evidence had been closed, Defendant then renewed his request to question Agent Coleman.[65]

District courts have discretion to determine whether to reopen evidence for additional testimony.[66] However, "courts should be extremely reluctant to grant reopenings."[67] The evidence the party seeks to admit must be "relevant, admissible, technically adequate, and helpful to the jury in ascertaining the guilt or innocence of the accused."[68] Under the Federal Rules of Evidence, evidence is relevant and thus admissible if it tends to make a fact at issue more or less probable.[69] While Defendant argued that testimony establishing that he was being surveilled would make it more likely that he was apprehensive about being arrested and less likely that he would have been carrying firearms,[70] Defendant had already testified without contradiction that he was apprehensive about being arrested.[71] As a result, the evidence would, at best, be cumulative and Defendant failed to establish that it would have advanced his defense.

Additionally, the party moving to reopen the evidence must provide an explanation for failing to present the testimony while the evidence was open, and the district court must evaluate

---

[63] Tr. 3/18/15 at 182.

[64] Tr. 3/18/15 at 182, 187.

[65] Tr. 3/19/15 at 6.

[66] *United States v. Watson*, 244 F. App'x 484, 487-88 (3d Cir. 2007).

[67] *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000), *as amended* (Aug. 31, 2000) (internal quotations omitted).

[68] *United States v. Coward*, 296 F.3d 176, 181 (3d Cir. 2002) (internal quotations and citations omitted).

[69] Fed. R. Evid. 401; Fed. R. Evid. 402.

[70] Tr. 3/19/15 at 8-9.

[71] Tr. 3/18/15 at 139.

whether this explanation is reasonable and adequately explains the initial failure.[72] Defendant has provided no explanation for his decision to not call the surveilling agents while his case remained open and the agents were available.[73] In fact, before Defendant rested, upon the Court's questioning, he explicitly stated that he would not call the surveilling agents as witnesses.[74] As a result, the Court did not err in refusing to allow Defendant to call witnesses that were available while the evidence was open and that Defendant chose not to call before he rested his case.[75] Moreover, the trial likely would have been delayed to secure the attendance of the agents, who were not in attendance when Defendant belatedly asked to call them, as both Defendant and the Government rested the previous day.[76]

### (4) Denying Defendant's request for the arresting officers' and surveilling agents' telephone records

Defendant argues that the Court erred in denying Defendant's request for records identifying calls made between the arresting officers and the surveilling agents. Defendant argues that such records are relevant to his defense and thus must be disclosed.[77] Under *Brady v. Maryland,* the prosecution has a duty to disclose evidence that is favorable to a Defendant and material to his defense.[78] This includes evidence that the prosecution actually possesses, as well

---

[72] *Kithcart*, 218 F.3d at 220.

[73] Tr. 3/18/15 at 92-93 (stating that Agent Coleman was available to testify and Agent Sinopole was being located).

[74] Tr. 3/18/15 at 182.

[75] Tr. 3/18/15 at 92-93; Tr. 3/18/15 at 182.

[76] After Defendant stated that he was not going to call the agents, the Court excused Taylor Aspinwall, a lawyer for the Government who was present at Defendant's trial to object if the surveilling agents were questioned about classified information. Tr. 3/16/15 at 43-47; Tr. 3/18/15 at 182.

[77] *Brady v. Maryland*, 373 U.S. 83 (1963).

[78] *Id.* at 87.

as evidence that the prosecution does not possess but should know exists.[79] Here, the Government declared on the record that it had no records of calls made between the arresting officers and surveilling agents in its possession and no evidence to suggest that such records existed.[80] Defendant has never provided any evidence to the contrary.[81] Because there is no evidence that such records were in the prosecution's possession or that they existed at all, the Court did not err in denying Defendant's request.

### (5) Admitting evidence of Defendant's prior convictions

Defendant argues that the Court erred in admitting evidence of his prior convictions, because, Defendant contends, the probative value of these convictions is outweighed by the danger of unfair prejudice. Under the Federal Rules of Evidence, convictions punishable by imprisonment for more than one year "must be admitted in a criminal case in which the witness is a Defendant, if the probative value of the evidence outweighs its prejudicial effect."[82] Both before trial when considering a motion in limine, and during the trial, the Court balanced the probative value of Defendant's prior convictions against their prejudicial effect. The Court held that the danger of unfair prejudice outweighed the probative value of admitting evidence of Defendant's convictions for simple assault and firearm possession, and thus the Court excluded evidence of these convictions.[83] The Court admitted evidence of Defendant's convictions for

---

[79] *United States v. Joseph*, 996 F.2d 36, 39 (3d Cir. 1993).

[80] Tr. 3/16/15 at 31.

[81] Tr. 3/16/15 at 29-34.

[82] Fed. R. Evid. 609.

[83] 4/3/13 Order Doc. 50 at 1-2; Tr. 3/18/15 at 153-54.

robbery, terroristic threats, criminal conspiracy, possession with intent to distribute a controlled substance, and fleeing or attempting to elude an officer.[84]

In making these rulings, the Court weighed four factors: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the defendant's testimony to the case; and (4) the importance of the credibility of the defendant."[85] In evaluating the type of crime involved, courts consider both "how probative the prior conviction is to the witness's character for truthfulness" and "the similarity of the crime to the offense charged."[86] Here, the Court determined that Defendant's prior conviction for possession of a firearm was highly prejudicial because of its similarity to the crime charged.[87] In contrast, the Court found that although Defendant's other prior convictions would have some prejudicial effect, they are not similar to the crime charged.[88] Moreover, while not all of Defendant's prior convictions involved dishonesty, "one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath."[89] This is especially important here, where Defendant's credibility was central to the case.[90] Finally, the Court found that all of Defendant's convictions or his release from confinement occurred less than ten years earlier.[91] As a result, the

---

[84] 4/3/13 Order Doc. 50 at 1-2; Tr. 3/18/15 at 153-54.

[85] *United States v. Caldwell*, 760 F.3d 267, 286 (3d Cir. 2014) (internal quotation marks omitted).

[86] *Id.*

[87] 4/3/13 Order Doc. 50 at 1-2.

[88] 4/3/13 Order Doc. 50 at 1-2.

[89] *United States v. Murphy*, 172 F. App'x 461, 462 (3d Cir. 2006) (internal quotations and citations omitted); 4/3/13 Order Doc. 50 at 1-2.

[90] 4/3/13 Order Doc. 50 at 1-2.

[91] 4/3/13 Order Doc. 50 at 1.

Court determined that the probative value of his convictions for robbery, terroristic threats, criminal conspiracy, possession with intent to distribute a controlled substance, and fleeing or attempting to elude an officer outweighed their prejudicial effect.

It is worth noting that any additional prejudicial effect of these convictions was minimal in light of Defendant's own testimony at trial. Defendant offered on his own direct examination that he had been convicted of fleeing and attempting to elude a police officer and simple assault, even though the Court had excluded Defendant's simple assault conviction.[92] As set forth above, Defendant presented the fact of his prior convictions and outstanding warrant as evidence that he was apprehensive of being arrested and was therefore unlikely to have firearms; in effect, the convictions were a central component of Defendant's defense. Moreover, even if it was error to admit any of his prior convictions for use by the Government, because of Defendant's testimony, it is not reasonably probable that the evidence influenced the jury's verdict.

### (6)     Admitting the police scanner into evidence

Finally, Defendant claims the Court erred in admitting the physical evidence of the police scanner and in allowing the prosecutor to refer to the police scanner throughout the trial. Defendant contends that the evidence was not relevant and its prejudicial effect outweighed its probative value.[93] However, evidence that Defendant possessed and admitted to possessing the police scanner, as well as the bag and everything else that the officers testified to finding in his bag, except for the firearms, is relevant to whether the firearms were in Defendant's bag and

---

[92] Tr. 3/18/15 at 138, 140; 4/3/13 Order Doc. 50 at 1-2.

[93] To the extent Defendant also disputes the admissibility of the other items that were in the bag, these items are relevant for the same reasons the police scanner is relevant. Evidence that Defendant possessed and admitted to possessing the bag as well as the keys, book, and baggies the officers testified to finding in the bag makes it more likely that the officers also found firearms in his bag. Additionally, evidence of the bag and its contents, including the physical evidence itself, allowed the jury to assess the credibility of testimony that the bag did not fit under the front passenger seat and that a gun was found sticking out of the bag.

whether Defendant possessed them. Additionally, the police scanner is relevant to the Government's contention that Defendant used the police scanner to track police officers' movements to avoid being found possessing firearms. Moreover, evidence regarding the bag and the size of its contents, including the physical evidence itself, allowed the jury to assess the credibility of testimony that the bag did not fit under the front passenger seat and that a gun was found sticking out of the bag. As a result, the Court did not err in ruling that this evidence was relevant, as it tended to make multiple facts at issue more or less likely.

Prejudice to Defendant did not substantially outweigh the probative value of admitting the police scanner because Defendant stipulated to having the scanner in his bag on the night he was arrested, called his aunt to testify that she put it in the bag, and thus any additional prejudice from allowing the jury to see the scanner is minimal.[94]

### B. Motion for Arrest of Judgment

Defendant argues that the Court did not have jurisdiction over the charged offense of possession of a firearm by a convicted felon in violation of 18 U.S.C. Section 922(g)(1) because the statute exceeds Congress's authority under the Commerce Clause of the U.S. Constitution. However, the Third Circuit squarely rejected this argument in *United States v. Singletary*.[95] Because *Singletary* remains binding on this Court, the Court did not lack jurisdiction over the offense charged and Defendant's Motion for Arrest of Judgment will be denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for New Trial and Motion for Arrest of Judgment will be denied. An order will be entered.

---

[94] Tr. 3/17/15 at 48, 166.

[95] 268 F.3d 196, 197 (3d Cir. 2001).